IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE: ) | CASE NO. BK 16-80141 |
| ) | |
| ABENGOA BIOENERGY OF NEBRASKA, ) | |
| LLC, ) | |
| Debtor. ) | |

### MOTION TO LIMIT THE DEBTOR'S POWERS UNDER 11 U.S.C. §303(f) TO SELL ITS ASSETS OR OBTAIN NEW SECURED LOANS OR IN THE ALTERNATIVE TO APPOINT AN INTERIM TRUSTEE PURSUANT TO 11 U. S.C. §303(g) AND FED. R. BANKR. P. 2001 (a)

COME NOW Gavilon Grain, LLC ("Gavilon"), Farmers Cooperative Association ("Farmers Coop"), and The Andersons, Inc. (collectively the "Petitioning Creditors"), and hereby move this Court for an order either limiting the Debtor's ability to sell or encumber its assets under 11 U.S. C. §303(f) during the gap period absent compliance with 11 U.S.C. §363 and 364 respectively; or, in the alternative, for the appointment of an interim trustee pursuant to 11 U.S.C. §303(g) and Fed. R. Bankr. P. 2001(a) in this case during the gap period, and in support thereof submit the following:

### FACTUAL BACKGROUND

1.  Debtor is a Nebraska limited liability company which operates biofuel facilities in Ravenna, Nebraska. See Declaration of William M. Vernon ("Vernon Decl.") ¶2, Declaration of Pamela Treffer ("Treffer Decl.") ¶2, and Declaration of Matthew Sims ("Sims Decl.") ¶2, each of which were filed contemporaneously herewith in support of this Motion.

2.  Gavilon is a buyer and seller of commodities throughout the United States. Gavilon sold corn to the Debtor's Ravenna, Nebraska facility. As of the date of the filing of the involuntary petition in this case, Gavilon is owed the principal sum of $2,276,743.75 for corn delivered to Debtor's Ravenna facility. See Vernon Decl. ¶3, Ex. "A". The Debtor has not

disputed this liability or the amount due as of the date of the filing of the involuntary petition. Vernon Decl. ¶3.

3. Farmers Coop is a Nebraska cooperative corporation which engages in the purchase and sale of commodities and other supplies in the state of Nebraska. Farmers sold corn and other supplies to the Debtor's Ravenna, Nebraska facility. As of the date of the filing of the involuntary petition in this case, Farmers is owed the principal sum of $362,269.00 for corn and other supplies delivered to Debtor's Ravenna facility. See Treffer Decl. ¶3, Ex. "A". Famers Coop is aware of no defense to the liability or amount of this debt. Id.

4. The Andersons, is a corporation, with its principal place of business in Maumee, Ohio. The Andersons was a grain supplier to the Debtor selling corn to its Ravenna, Nebraska facility. As of the date of the filing of the involuntary petition in this case, The Andersons is owed the principal sum of $1,434,813.38 for corn delivered to Debtor's Ravenna facility. See Sims Decl.¶3, Ex."A". Id. The Andersons is aware of no defense to the liability or amount of this debt. Id.

5. Upon information and belief, the Debtor is an indirect subsidiary of Abengoa, S.A. a Spanish corporation ("Abengoa"), and has its principal place of business outside the United States in Spain. See Vernon Decl. ¶4.

6. Abengoa filed foreign pre-insolvency proceedings before the Mercantile Courts of Seville, Spain on November 25, 2015. See Vernon Decl. ¶4, Exhibit B. On December 9, 2015, the Debtor and its Kansas affiliate, Abengoa Bioenergy Company, LLC, ("ABC") held a meeting with several of its unpaid suppliers including the Petitioning Creditors, at its affiliates' Ravenna, Nebraska facilities. At this meeting, Debtor reiterated that Abengoa, S.A., its ultimate Spanish parent, had filed pre-insolvency proceedings in Spain, that the Debtor was out of cash and had placed its plant on idle because it was unable to pay for the grain it had purchased from its

suppliers. Debtor also stated that although it would try to pay its creditors if it could, the Debtor was unable to make any payments at that time, or in the foreseeable future. The Debtor also told the suppliers at that meeting that its Spanish parent provided a central treasury function to the Debtor and its affiliates which gave it access to the Debtor's funds, and the Petitioning Creditors understood this in part had caused the Debtor to be unable to pay its suppliers such as the Petitioning Creditors. See Vernon Decl. ¶5, Treffer Decl. ¶4, and Sims Decl. ¶4.

7. As the articles attached to the Vernon Declaration reflect, the Debtor's parent Abengoa, S.A. is also apparently attempting to sell the assets of the Abengoa Bioenergy group including the Debtor to raise cash to satisfy Abengoa, S.A.'s financial needs. Vernon Decl. ¶6 Exhibits "C" –"G". As such, Petitioning Creditors are concerned that the assets will be sold in an expedited manner with the proceeds of any such sale retained by the parent in Spain rather than used to satisfy the Debtor's U.S. creditors. As the Petitioning Creditors' supporting declarations state, Debtor has previously told those creditors that cash retention by the parent in Spain has been the cause of the Debtor's prior inability to pay them. Vernon Decl. ¶5, Treffer Decl. ¶4; Sims Decl. ¶4.

## RELIEF REQUESTED

8. In light of the foregoing background, the Petitioning Creditors are concerned that the value of the Debtor's available assets will be lost by being transferred to Abengoa, S.A. instead of paying the Debtor's non-insider U.S. creditors with those proceeds retained by Abengoa, S.A. in Spain for its own reorganization purposes. For these reasons, the Petitioning Creditors respectfully request the court either limit the Debtor's powers under 11 U.S.C.§ 303(f) to prevent it without prior Bankruptcy Court approval from selling its assets outside the ordinary course of business, or from further encumbering them; or, in the alternative, that the Court

appoint an interim trustee under 11 U.S.C.§ 303(g) to prevent the loss of these assets and equity to Debtor's estate.

## PREDICATES FOR RELIEF

9.  The Bankruptcy Code provides the court the authority to place controls on the Debtor. It provides "notwithstanding section 363 of this title, *except to the extent that the court orders otherwise*, and until an order for relief in this case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been continued." 11 U.S.C. § 303(f). The authors of Collier's point out the availability of such relief to creditors worried about dissipation of the estate during the gap period stating, "... if the debtor is acting in a manner that suggests the assets of the estate will be disposed of to the detriment of creditors, the court can limit the debtor's powers under section 303(f) as that subsection contemplates that the court can 'order otherwise'". 2 Collier on Bankruptcy ¶302.23[1] at p. 303-81 (Alan N. Resnick and Henry J. Sommer 16th ed.) Therefore, 11 U.S.C. § 303(f) allows the Court to limit the Debtor's ability to transfer or encumber its assets during the gap period. The Petitioning Creditors request the Court exercise this power and restrict the Debtor's ongoing abilities to sell its assets outside the ordinary course of business or further encumber these assets during the gap period absent strict compliance with 11 U.S.C. §§ 363 and 364, so that all parties in interest can have an opportunity to review such actions and, if appropriate, object and obtain controls on the disposition of the proceeds of any such transactions.

10. In addition, 11 U.S.C. §303(g) provides another avenue for protection to creditors during the gap period by allowing for appointment of interim trustee. It provides, "at any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the Debtor and a

4

hearing, and if necessary to preserve the property of the estate or prevent loss to the estate, may order the U.S. Trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the Debtor."

11. Fed. R. Bankr. P. 2001 (a) provides the procedures for appointment of an interim trustee. This Rule requires the filing of a written motion by a party in interest under section 303(g) of the code that sets forth the necessity for the appointment, and the scheduling of a hearing on notice to the Debtor, the petitioning creditors, United States trustee, and other parties in interest. The interim trustee may then be appointed upon satisfaction of the standards of 11 U.S.C. §303(g) upon the movant's furnishing of a bond in an amount set by the court conditioned to indemnify the Debtor for costs, attorney's fees, expenses, and damages allowable under section 303(i) of the code.

12. "Although the courts generally have expressed reluctance to [appoint an interim trustee] absent a clear showing of necessity, the courts have not hesitated to do so where the evidence establishes that the Debtor has made transfers with an intent to hinder, delay or defraud creditors by way of a bulk sale at fire sale prices, by transfers to relatives or insiders, or both." 9 Collier on Bankruptcy ¶2001.02[1] at p. 2001-5 (Alan N. Resnick and Henry J. Sommer 16th ed.).

13. The Petitioning Creditors submit the above facts establish that: (a) the Debtor's indirect parent Abengoa, S.A. has access to the Debtor's funds which in part prevented it from paying the Petitioning Creditors, (b) Debtor's ultimate parent Abengoa, S.A. is in pre-insolvency proceedings in Spain, (c) the news articles attached as Exhibits "C"–"G" to the Vernon Declaration indicate Abengoa, S.A. is trying to sell the Debtor's and its affiliates' assets and that it plans to use the money raised to fund Abengoa, S.A.'s reorganization, leading to the concern the proceeds will not to be used to pay the existing creditors of the Debtor; and, (e) the Debtor's

plant, although it is not currently operational, is believed to have sufficient equity available to pay a portion or all of Debtor's existing creditors, however that equity could be quickly eroded by sales or additional liens that are used to generate cash to fund its Spanish indirect parent Abengoa, S.A.'s reorganization during the gap period, rather than pay the Debtor's non-insider creditors.

14. The Petitioning Creditors respectfully submit that the foregoing facts support the conclusion that the Debtor's assets are in danger of being lost and transferred to its parent in Spain or to other third parties in the gap period rendering such assets unavailable to Debtor's legitimate non-insider creditors. Therefore the controls afforded by either an order limiting the Debtor's ability under 11 U.S.C. §303(f) to sell or encumber those assets absent compliance with 11 U.S.C. §§ 363 and 364 respectively; or the appointment of an interim trustee under 11 U.S.C. §303(g) is justified to insure the Debtor's assets are neither lost to Debtor's existing creditors, nor further encumbered during the gap period.

WHEREFORE, The Petitioning Creditors jointly move this court for an order limiting the Debtor's powers under 11 U.S.C. §303(f) by prohibiting it from selling its assets outside the ordinary course of business absent compliance with 11 U.S.C. §363, or encumbering those assets absent compliance with 11 U.S.C. §364; or alternatively for the appointment of an interim trustee in this case to provide such controls and protections, and for such other and further relief as the court deems appropriate.

DATED this 4th day of February, 2016.

By: /s/James J. Niemeier
    James J. Niemeier, Esq. – NE Bar #18838
    James G. Powers, Esq. – NE Bar #17780
    Robert P. Diederich, Esq. – NE Bar #23393
    McGRATH NORTH MULLIN & KRATZ, PC LLO
    First National Tower
    1601 Dodge Street, Suite 3700
    Omaha, Nebraska 68102
    Telephone: (402) 341-3070
    Facsimile: (402) 341-0216
    jniemeier@mcgrathnorth.com
    jpowers@mcgrathnorth.com
    rdiederich@mcgrathnorth.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served by electronic filing utilizing the Court's CM/ECF system which gave notification electronically upon all parties who have filed an appearance or motion by electronic filing in this case on this 4th day of February, 2016.

/s/ James J. Niemeier